**FILED**
**Nov 21, 2019**
**04:02 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| **MICHAEL L. LANE,** | ) | **Docket No. 2018-01-0313** |
| **Employee,** | ) | |
| **v.** | ) | |
| **VISKASE COMPANIES, INC,** | ) | **State File No. 30803-2018** |
| **Employer,** | ) | |
| **and** | ) | |
| **PROPERTY AND CASUALTY INS.** | ) | **Judge Thomas Wyatt** |
| **CO. OF HARTFORD,** | ) | |
| **Carrier.** | ) | |

## REVISED EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS
## (DECISION ON THE RECORD)

On November 20, 2019, the Court considered Michael L. Lane's request for an on-the-record decision of his claim for medical and temporary disability benefits based on his alleged work-related ruptured wrist tendon. Viskase Companies, Inc. did not object to Mr. Lane's request, and the Court determined it had sufficient evidence to decide the issues on the record.

The parties submitted two issues for decision: (1) whether Mr. Lane's injury arose primarily out of and in the course and scope of employment, and (2) whether he established entitlement to medical and temporary disability benefits. For the reasons below, the Court holds that Mr. Lane satisfied his burden of proof but awards him medical benefits only.

### History of the Case

On January 13, 2018, Mr. Lane injured his left wrist when he pulled on a "stuck" core-chuck latch with greater force than normal. Viskase sent him to Lakeway Urgent Care Center without offering him a panel. A nurse practitioner at Lakeway noted Mr. Lane's history of straining his left wrist when he "tried to pull a latch on the reel[.]" The nurse ordered x-rays and wrote:

We discussed the fact that we believe the patient's current wrist pain is an exacerbation of his chronic arthritis. We explained that the recent changes in Tennessee Workers [sic] Comp law now require an injury to be more than 50% related to the incident at work to be eligible for compensability. Due to the mechanism of injury, pulling on a latch during routine work, we do not feel that this incident meets that criteria.

Dr. John Sanabria, Lakeway's owner, testified by deposition that he is personally involved in all decisions made for workers' compensation patients at Lakeway, and he agreed with the nurse's decision on diagnosis and causation.

Viskase later offered Mr. Lane a panel from which he selected Lakeway. Mr. Lane returned to Lakeway and saw Dr. Sanabria, who ordered an MRI. The MRI revealed degenerative changes in the left wrist, including at the base of the left thumb, and showed a full thickness tear of the extensor pollicis longus (EPL) tendon. Dr. Sanabria described Mr. Lane's tendon rupture as "spontaneous" and stated it "seems reasonable to conclude that the complete tendon rupture may have occurred while pulling on the latch[.]" But he also wrote:

More than likely, the extensive osteophyte formation (bony spurring) at the base of the thumb frayed the tendon over time and weakened it to the point where it finally ruptured. In my medical opinion, it would be unreasonable to conclude that a sudden complete rupture of the [EPL] in an otherwise healthy wrist could occur from "pulling a latch."

Dr. Sanabria testified on causation that, under the "recent changes in TN Workers' Comp Law," Mr. Lane's injury was not compensable because he "has severe chronic pathology in the wrist which easily accounts for greater than 51% of causation for the condition." Despite his torn tendon, Dr. Sanabria released Mr. Lane as "[fit] for duty without restrictions" and suggested he see his private physician for an orthopedic referral. Viskase denied Mr. Lane's claim based on Dr. Sanabria's opinion.

Mr. Lane saw an orthopedist on February 15, following Dr. Sanabria's advice. This physician noted that Mr. Lane "was at work when he was pulling on something; it would not open, he had to pull more forcefully and he then felt a pop in his left wrist." He referred Mr. Lane to orthopedist Dr. Robert Ivey for a surgical consultation.

Mr. Lane saw Dr. Ivey on March 1. Dr. Ivey recorded Mr. Lane's history of "pulling on a heavy core chuck latch and felt a pop in his wrist." He further noted Mr. Lane's complaint of not being able to straighten his left thumb since the injury. Dr. Ivey offered the following causation opinion in his treatment notes: "I feel that he had a traumatic rupture of his [EPL] tendon. This a work compensable condition, which arose

directly out of the course of his employment. He also has non work compensable thumb arthritis."

Dr. Ivey recommended surgery, which he performed on March 22. In surgery, Dr. Ivey confirmed the tendon rupture shown on MRI and repaired it. Mr. Lane and a private health carrier paid Dr. Ivey's charges, including for therapy ordered by Dr. Ivey.

Dr. Ivey's deposition testimony confirmed the causation opinion in his notes. He stated "[the ruptured tendon] was a work compensable condition that occurred when he was pulling on that heavy chuck latch." Later in the deposition, Dr. Ivey considered Dr. Sanabria's opinion that the pre-existing arthritis in Mr. Lane's thumb frayed the tendon in question and represented more than 50% of the causation of the ruptured tendon. Dr. Ivey disagreed with that opinion because the ruptured tendon in Mr. Lane's left wrist is "in a different [anatomical] zip code from the thumb arthritis." Dr. Ivey confirmed it was his opinion "that within a reasonable degree of medical certainty the cause of the tendon rupture over 50 percent actual predominant efficient cause was pulling of the chuck latch[.]"

In his deposition, Dr. Sanabria testified that Dr. Ivey was one of the best hand and wrist surgeons in the area and had a "perfect" reputation in the medical community. He stated that he often referred patients to Dr. Ivey for surgical treatment. However, he disagreed with Dr. Ivey's statement that the tendon rupture was not in the same "zip code" as the arthritis at the base of Mr. Lane's thumb. Dr. Sanabria cited MRI findings in support of his opinion that the tendon rupture occurred in an area adjacent to the arthritis and osteophytes at the base of Mr. Lane's wrist. Dr. Sanabria also confirmed his previous opinion that the primary cause of Mr. Lane's ruptured tendon was the osteophytes from pre-existing, non-work-related arthritis, which frayed the tendon over time and made it more susceptible to rupture. He stated that a normal, healthy tendon would not generally rupture under the pressure of simply opening a latch.

Mr. Lane missed work from the injury date until Dr. Ivey released him with restrictions on July 31. Dr. Ivey's records indicate that Mr. Lane's wrist was placed in a cast; Mr. Lane needed to keep his wrist elevated; he should undergo therapy; and, over the course of time, Mr. Lane should advance to more activity as tolerated. Dr. Ivey's June 18 note indicated that Mr. Lane stated he did not feel he could resume his regular job due to his injury, which Dr. Ivey did not confirm or deny. None of the records submitted to the Court includes documentation that Dr. Ivey or any other physician took Mr. Lane off work due to his work injury.

Regarding medical benefits, Dr. Ivey testified that Mr. Lane's ruptured tendon would not have healed on its own, and thus surgery was necessary to treat the condition. He further testified that the bills he charged for treating Mr. Lane were "reasonable expenses for this treatment protocol." Mr. Lane submitted two billing records from Dr.

3

Ivey's practice documenting charges, insurance payments, patient payments, and adjustments relating to the treatment of his ruptured tendon.

## Findings of Fact and Conclusions of Law

At this Expedited Hearing, Mr. Lane must present sufficient evidence that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2019). Specifically, he must establish that his injury arose primarily out of his employment and caused either "disablement or the need for medical treatment." Tenn. Code Ann. § 50-6-102(14). An injury arises primarily out of the employment if the evidence shows to a reasonable degree of medical certainty that the work contributed more than fifty percent in causing the injury when considering all causes. "Shown to a reasonable degree of medical certainty" means that it is more likely than not considering all causes. *Id.*

The Court considered two conflicting medical opinions on the causation of Mr. Lane's ruptured tendon. When confronted with conflicting opinions, the Court has discretion to conclude that one contains the more probable explanation and should govern the decision in the case. *Ledford v. Mid-Georgia Courier, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 28, at *8 (June 4, 2018). In evaluating the opinions, the Court may consider, among other things, the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts. *Hollis v. Komyo Amer.,* 2019 TN Wrk. Comp. App. Bd. LEXIS 4, at *11 (Jan. 22, 2019). The Court afforded Dr. Sanabria's causation opinion a presumption of correctness since Mr. Lane selected him from a panel. Tenn. Code Ann. § 50-6-102(14)(E). This presumption is rebuttable by a preponderance of the evidence. *Id.*

After closely reviewing the testimony of Drs. Sanabria and Ivey, Mr. Lane's affidavit, and the entire record, the Court holds that the preponderance of the evidence sufficiently rebuts Dr. Sanabria's opinion that Mr. Lane's injury did not arise primarily out of and in the course and scope of employment. Instead, the Court holds that Dr. Ivey's causation opinion provides the more plausible explanation for Mr. Lane's ruptured tendon.

The Court considered the following in coming to the above conclusion:

- Mr. Lane's injury is orthopedic in nature and required surgery. Dr. Ivey is an orthopedic surgeon with a specialty in treating hand and wrist conditions. Dr. Sanabria limits his practice to non-surgical care of general medical conditions.
- Dr. Ivey saw Mr. Lane on more occasions than did Dr. Sanabria and visualized the location of Mr. Lane's tendon rupture in surgery. Dr. Sanabria relied on MRI findings made by another physician in testifying as to the location of the tendon rupture.

4

- Dr. Sababria based his causation opinion on the assumption that Mr. Lane injured his wrist while performing the "routine" duty of opening a latch. The Court accepts as credible Mr. Lane's sworn testimony that his injury occurred when he had to pull the latch harder than normal because it was stuck.[1]
- Drs. Sanabria and Ivey both agreed that Mr. Lane ruptured his tendon when he pulled on a latch. However, they disagreed as to the percentage of causation to assign the non-work-related arthritis at the base of Mr. Lane's thumb. The Court holds Dr. Ivey's assessment that the arthritis constitutes less than 50% of the causative effect on the rupture of Mr. Lane's tendon represents the more plausible explanation. In support of this holding, the Court considered the fact that Mr. Lane successfully worked with arthritis at Viskase before he ruptured his tendon.

In view of the above, the Court holds that Mr. Lane will likely prevail at trial in establishing that his ruptured tendon arose primarily out of and in the course and scope of employment.

The Court additionally holds that Mr. Lane will likely prevail in proving his entitlement to medical benefits. Dr. Ivey testified that the ruptured tendon would not heal without surgery, and his treatment protocol of surgery, examinations, and therapy constituted reasonable and necessary treatment for Mr. Lane's work-related injury.

The Court further holds that, because Viskase denied Mr. Lane's claim, he reasonably sought treatment from Dr. Ivey. In support, the Court notes that Dr. Sanabria recommended orthopedic treatment of the ruptured tendon. Therefore, the Court orders that Viskase authorize Dr. Ivey as authorized treating physician for ongoing treatment of Mr. Lane's tendon injury. *See McCord v. Advantage Human Resourcing,* 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *14 (Mar. 27, 2015), holding "an employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice." The Court also holds that Viskase shall pay the charges of OrthoTennessee.

As to temporary total disability benefits, Mr. Lane must show he is likely to prove: (1) a disability from working as the result of a work injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *See Shepherd v. Haren Const. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Here, Mr. Lane did not prove that a doctor took him off work for his ruptured tendon. For that reason, the Court denies Mr. Lane's claim for temporary disability benefits at this time.

---

[1] The physician whom Mr. Lane saw after Lakeway corroborated Mr. Lane's history that he pulled on the latch harder than normal at the time of injury.

**It is, therefore, ORDERED:**

1. Viskase shall pay the charges for the treatment provided and ordered by Dr. Robert Ivey for Mr. Lane's ruptured left EPL tendon.

2. Viskase shall authorize Dr. Ivey to provide ongoing care of Mr. Lane's tendon injury.

3. Mr. Lane's claim for temporary disability benefits is denied at this time.

4. Unless interlocutory appeal of this Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

5. The Court schedules a telephonic Status Conference at **10:00 a.m. Eastern Time on February 21, 2020.** The parties shall call 855-747-1721 (toll-free) or 615-741-3061 to participate in the hearing. A party's failure to call at the scheduled time might result in the Court making decisions, including scheduling decisions, without the absent party's participation.

**ENTERED November 21, 2018.**

Judge Thomas Wyatt
Court of Workers' Compensation Claims

**Appendix**

**Technical Record:**

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Transfer Order
4. Request for Expedited Hearing—Decision on the Record
5. Employee's Position Statement
6. Docketing Notice—Decision on the Record

**Exhibits:**

1. Affidavit of Michael Lane
2. Transcript of the deposition of Dr. Robert Ivey
3. Transcript of the deposition of Dr. John Sanabria
4. Records of Lakeway Urgent Care/Dr. Sanabria
5. Records of OrthoTennessee/Dr. Ivey
6. Form C42 Choice of Physicians
7. Notice of Denial of Claim
8. Wage Statement

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on November 21, 2019.

| Name | Certified Mail | First Class Mail | Email | Service sent to: |
|------|---------------|------------------|-------|------------------|
| Steven Williams, Employee's Attorney | | | X | lawyervol@gmail.com;swilliams lawoffice@gmail.com |
| Blair Cannon, Employer/Ins. Carrier's Attorney | | | X | Blair.cannon@thehartford.com |

**Penny Shrum, Court Clerk**
**WC.CourtClerk@tn.gov**

8



## Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

Employee _____

v.

Employer _____

**Notice**

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

Judge_____

**Statement of the Issues**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

**Additional Information**

Type of Case [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

**List of Parties**

Appellant (Requesting Party):_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ SF#: _____ DOI: _____

## Appellee(s)

Appellee (Opposing Party):_____At Hearing: ☐Employer ☐Employee

Appellee's Address:_____

Appellee's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*Attach an additional sheet for each additional Appellee*

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

## AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name: _____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                    RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month      Medical/Dental  $ _____ per month

Groceries         $ _____ per month      Telephone       $ _____ per month

Electricity       $ _____ per month      School Supplies $ _____ per month

Water             $ _____ per month      Clothing        $ _____ per month

Gas               $ _____ per month      Child Care      $ _____ per month

Transportation    $ _____ per month      Child Support   $ _____ per month

Car               $ _____ per month

Other             $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____        (FMV) _____

Other                 $ _____        Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____      _____

_____      _____

_____      _____

_____      _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082